### TAYLOR v. NICHOLS.

(Supreme Court, Appellate Division, Third Department. November 10, 1909.)

1. EVIDENCE (§ 318*)—HEARSAY.

In a suit by the trustee to recover a fraudulent preference given to one who was not a party to the bankruptcy proceeding, the schedules filed and evidence given by the bankrupt in the proceedings for discharge are hearsay as to the defendant, and inadmissible to establish insolvency at the time of the transfer.

[Ed. Note.—For other cases, see Evidence, Dec. Dig. § 318.*]

2. WITNESSES (§§ 321, 400*)—IMPEACHMENT.

One cannot impeach his own witness or prove contradictory statements as to matters upon which the witness has been examined.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1094, 1099–1100, 1268, 1269; Dec. Dig. §§ 321, 400.*]

John M. Kellogg, J., dissenting.

Appeal from Trial Term, Delaware County.

Action by Frank A. Taylor, as trustee in bankruptcy, against Jesse M. Nichols. From a judgment for plaintiff, defendant appeals. Reversed, and new trial granted.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

F. W. Welsh, for appellant.

Wesley Gould (C. L. Andrus, of counsel), for respondent.

SMITH, P. J. This action is apparently brought under section 60 of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445]) to recover from the defendant the sum of $500, as having been paid to him by one William H. Nichols, an insolvent, within four months from the date of his insolvency, and as having been received by the said defendant with knowledge of the fact that it was intended to give to him a preference as a creditor. Two facts were required to be proven in order to justify the judgment rendered: First, that at the time of the transfer William H. Nichols was insolvent; and, second, that this defendant had reasonable ground to believe that the transfer was made with intent to give him a preference. Both facts have been found by the learned trial judge, and upon them he has directed the judgment against the defendant from which this appeal has been taken.

The judgment is challenged by the defendant for various reasons. Among others, it is claimed that illegal evidence was received over his objection to establish the insolvency of William H. Nichols at the time

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of the transfer. With the petition filed by the said Nichols to obtain his discharge from bankruptcy, he filed certain schedules of his assets and liabilities, and in the proceedings which resulted in his discharge he gave certain evidence as to his condition upon January 26th, when it is claimed the fraudulent preference was given. These schedules and part of the evidence so given by him in the bankruptcy proceeding were offered in evidence by the plaintiff upon this trial, for the purpose of establishing the insolvency of the said Nichols at that time. To this offer the defendant objected that as to him they were hearsay, and that he was not bound by these declarations. The objections were overruled, the evidence was admitted, and the defendant excepted to the ruling.

We are unable to see upon what ground this evidence was competent. It was the declaration of the bankrupt in a proceeding in which it does not appear that this defendant was a party. As to this defendant the evidence would seem clearly to be hearsay and inadmissible. Burnham v. Brennan, 74 N. Y. 597; Schreyer v. Citizens' National Bank, 74 App. Div. 478, 77 N. Y. Supp. 494; Kain v. Larkin, 131 N. Y. 300, 30 N. E. 105; Lent v. Shear, 160 N. Y. 462, 55 N. E. 2. Upon the record it appears that the plaintiff's counsel contended that this was proper evidence in contradiction of the witness William H. Nichols, who had been upon the stand. This witness had been called by the plaintiff and testified in behalf of the plaintiff. It is elementary that you cannot impeach your own witness or prove contradictory statements as to matters upon which you have examined him. It follows that the judgment must be reversed, and a new trial granted, with costs to appellant to abide the event.

Judgment reversed, and new trial granted, with costs to appellant to abide event. All concur, except KELLOGG, J., dissenting in opinion, and SEWELL, JJ., not voting.

JOHN M. KELLOGG, J. (dissenting). The testimony of the bankrupt given upon the trial fixes his assets on the 17th of April, 1906, at $145,000, and his liabilities at $147,000, and shows that upon the 26th day of January, when the defendant withdrew the money, the assets and liabilities were each about $60,000 more. The introduction of his schedules in bankruptcy showing these same facts was entirely immaterial and not prejudicial to the defendant. The appraisers in bankruptcy as witnesses swore that a fair appraisal of all the bankrupt's assets was $49,655.99, which includes $6,000 as the total value of his real estate.

The deposition of the bankrupt contained no statement prejudicial to the defendant which was not found in the evidence of the bankrupt or of the defendant upon the trial. The schedules as evidence were therefore harmless. The testimony of the bankrupt shows that his bank held his notes for $53,339.69, and that he owned no property outside of the bank except his real estate and the stock of goods in the store. The real estate was sold at public auction, after due notice, for $5,865. The stock of goods sold for $1,000. Therefore the total assets of the bankrupt, outside of the bank itself, was $6,865, in addition

to which the bankrupt says that he had an equitable interest of about $12,000 or $13,000 with his brokers in New York, and the defendant understood that his father had $12,000 paper profit with his New York broker. Besides the notes of the bankrupt in the bank, he had an overdraft of $2,771.36 before the defendant as cashier, at his direction, canceled the notes of his sister, his brother, and his brother-in-law, aggregating $7,381, and charged the same to the bankrupt, making his overdraft $10,152.36, so that upon the day in question the bankrupt carried upon the bank books as assets his obligations of $63,492.05, and his total property, as we have seen, was of the value of $6,865, besides some apparent paper profits with a speculative broker's office in New York. If he had ordinary intelligence, he must have known of his insolvency.

The defendant, his son, 34 years of age, had always worked for his father, lived in the same village, and for the last 13 years had been cashier of his bank, and knew generally the value of property. He drew the $500 in question from the bank upon the same day that he as cashier extinguished the liabilities of the other members of the family to the bank. He says he received his money perhaps an hour before he canceled their notes. It was practically one transaction. On the 26th day of March he withdrew from the bank about $1,500 which stood to his credit as treasurer of a church society, and thereafter kept the money in his pocket, and he says:

"I don't think that this transaction of the 26th day of January had anything to do with my making up my mind that I wanted to withdraw these funds. There had been no practical change in my father's condition down to the 31st of March."

If he had ordinary intelligence, he must have known that his father was insolvent. It is incredible that either the bankrupt or the defendant was ignorant of the financial situation of the father, and the defendant must have realized that the withdrawal of these moneys gave him a preference over other creditors.

The judgment is clearly right. If the schedules in bankruptcy, the deposition of the bankrupt in the bankruptcy proceedings, and the appraisal in bankruptcy were stricken from the record, the remaining evidence does not leave the liability of the defendant in doubt. It would be a miscarriage of justice to reverse this judgment for technical errors in the receipt of evidence, when the facts shown by such evidence have been fully proven by witnesses in court and are substantially uncontradicted.

I favor an affirmance of the judgment.