MARION ROSENBLUH, Respondent, v. ABRAHAM KURASH, Appellant, Impleaded with WOOD DOLSON CO., INC., and Others, Defendants.

First Department, October 30, 1936.

*Elliot W. Isaacson* of counsel [*Joseph G. Glass*, attorney], for the appellant.

*Herbert S. Vogel* of counsel [*David H. Hausman*, attorney], for the respondent.

GLENNON, J. The plaintiff, as assignee of the Irving Trust Company, the trustee in bankruptcy of one Alexander J. Whynman, an attorney, has recovered a judgment in the sum of $6,077.19 against the defendant Abraham Kurash. The judgment as rendered is made up of the principal sum of $4,927.66, interest amounting to $985.53, and costs. The theory upon which the action is based was that the bankrupt, Whynman, had made the payment of the principal amount of the judgment in fraud of his creditors between the 18th day of October and the 30th day of November, 1932, to the agents representing the owner of the apartment house wherein Kurash resided.

It is impossible to tell from this record exactly who the owner of the house was. It is not disputed, however, that the managing agent turned over the sum received from the bankrupt to the owner. Furthermore, it appears that Kurash occupied the apartment under a ten-year lease, providing for the payment of $600 per month, which was entered into prior to 1930. It is conceded by the defendant that in the early part of·October, 1932, he was in arrears under the lease to the extent of $3,777.68. It seems that Kurash, being unable to meet his obligations in full, made payments on account. He requested a reduction of the rent but without success.

The defendant first became acquainted with Whynman in the month of July, 1932. The defendant told him that he was negotiating with the landlord for a new lease, and also about the

arrears and the conversations he had with the managing agents of the property. Whynman stated in substance that he could obtain the desired result by arranging to have the rent reduced to $300 a month and the arrears canceled, and that, if successful, his fee would amount to the sum of $1,200. Defendant delivered his check for that sum to Whynman upon the understanding that in the event of his failure to make the necessary arrangements the money paid was to be returned. Shortly thereafter Whynman attempted without success to interest Kurash in a deal involving about $50,000. It might be well here to note in passing that the records of this court show that about April 20, 1933, Whynman pleaded guilty to the crime of forgery in the second degree in the Court of General Sessions, upon a charge in no way connected with the subject-matter of this action, and was sentenced to prison for a term of not less than four years nor more than eight years.

We find that, instead of arranging for a reduction of the defendant's rent and the cancellation of the arrears, Whynman delivered to the defendant Wood Dolson Co., Inc., four of his individual checks dated October 18, October 26, November 25 and November 30, 1932, respectively, totaling $4,927.66, in full payment of all arrears in rent of the defendant Kurash. Strange as it may seem these payments were made by Whynman voluntarily, and without the knowledge or consent of Kurash, and certainly not as attorney on behalf of his client. What may have been Whynman's intent and his motive in making these payments which total in amount a sum far greater than he received from the defendant the record does not disclose. If we are to adopt the undisputed testimony of the defendant, we naturally would reach the conclusion, in view of subsequent happenings, that Whynman simply was laying the basis for future dealings whereby he expected to profit.

On February 9, 1933, Whynman was adjudicated a bankrupt. The plaintiff in this action on the 17th of July, 1934, purchased from the trustee in bankruptcy the claim in suit together with all the other accounts receivable with the exception of one for the sum of $710.

We believe that the judgment should have been rendered in favor of the defendant. Surely, under the principles of common law plaintiff could not have had a recovery. Whynman made a purely gratuitous payment of Kurash's indebtedness to the agent of the owner of the property without the knowledge or consent of Kurash. The money thus paid by Whynman without any request or authority express or implied from Kurash is not recoverable in an ordinary action at law. (*Title Guarantee &*

*Trust Co.* v. *Haven,* 196 N. Y. 487, 494.) " No one can thus make himself a creditor of another by the unsolicited payment of his debts." (*Kelley* v. *Lindsey,* 7 Gray, 287; *Homestead Co.* v. *Valley Railroad,* 17 Wall. 153, 167. See, also, *Title Guarantee & Trust Co.* v. *Haven, supra,* opinion in Action No. 1 at p. 497.)

The respondent seeks to sustain the judgment upon the contention that the payments were made by Whynman while the latter was insolvent and, therefore, they were in fraud of Whynman's creditors. It is asserted that the cause of action is based on subdivision e of section 70 of the National Bankruptcy Act (U. S. Code, tit. 11, § 110, subd. [e]), which reads: " The trustee may avoid any transfer by the bankrupt of his property which any creditor of such bankrupt might have avoided, and may recover the property so transferred, or its value, from the person to whom it was transferred, unless he was a *bona fide* holder for value prior to the date of the adjudication. Such property may be recovered or its value collected from whoever may have received it, except a *bona fide* holder for value."

It is claimed that " the effect of this section is to make fraudulent as against creditors any payment made by any insolvent debtor, if the same constitutes a fraudulent conveyance under State law." Section 273 of the New York Debtor and Creditor Law reads: " Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."

The respondent argues from these two sections that since Whynman made the payments while insolvent and Kurash received the benefit of them, the latter must return the amount of the payments to the assignee of the bankrupt's estate. The respondent cites no authority which favors this contention. Had Kurash personally received the payments there would be no doubt as to his obligation to return the amounts, if all other necessary facts were established. However, since the proof shows that the payments were made by Whynman to the agent of the owner voluntarily and without any request or authority from the defendant Kurash, it is our opinion that they cannot be recovered from Kurash personally under the provisions of the National Bankruptcy Act and the Debtor and Creditor Law to which reference has been made.

There is an additional reason why this judgment should not be permitted to stand. The plaintiff failed to establish by proper proof that Whynman was insolvent at the time he made payments

to the managing agent. Whynman was not called as a witness. In an attempt to supply the necessary evidence the plaintiff, over the objection of defendant's counsel, offered, and there was received in evidence (a) the record of Whynman's bankruptcy proceedings, and (b) testimony and admissions of Whynman under subdivision a of section 21 of the Bankruptcy Act (U. S. Code, tit. 11, § 44, subd. [a]). This evidence was not binding upon the defendant, since he was not a party to the proceeding and was afforded no opportunity to cross-examine the bankrupt. This principle is clearly established by the case of *Taylor* v. *Nichols* (134 App. Div. 787). There Presiding Justice SMITH said in part:

"The judgment is challenged by the defendant for various reasons. Among others, it is claimed that illegal evidence was received over his objection to establish the insolvency of William H. Nichols at the time of the transfer. With the petition filed by the said Nichols to obtain his discharge from bankruptcy, he filed certain schedules of his assets and liabilities, and in the proceedings which resulted in his discharge he gave certain evidence as to his condition upon January twenty-sixth, when it is claimed the fraudulent preference was given. These schedules and part of the evidence so given by him in the bankruptcy proceeding were offered in evidence by the plaintiff upon this trial for the purpose of establishing the insolvency of the said Nichols at that time. To this offer the defendant objected that as to him they were hearsay and that he was not bound by these declarations. The objections were overruled, the evidence was admitted, and the defendant excepted to the ruling.

"We are unable to see upon what ground this evidence was competent. It was the declaration of a bankrupt in a proceeding in which it does not appear that this defendant was a party. As to this defendant the evidence would seem clearly to be hearsay and inadmissible. (*Burnham* v. *Brennan*, 74 N. Y. 597; *Schreyer* v. *Citizens' National Bank*, 74 App. Div. 478; *Kain* v. *Larkin*, 131 N. Y. 300; *Lent* v. *Shear*, 160 id. 462.)"

Since there was no evidence in the record to sustain plaintiff's claim on the theory that the bankrupt in making the payments to the managing agent in the sum of $4,927.66, acted with the consent or approval of the defendant; and further, because of plaintiff's failure to establish by competent proof that Whynman was actually insolvent at the time he made the payments in the months of October and November, 1932, judgment should have been rendered in favor of the defendant.

Accordingly, the judgment should be reversed, with costs, and the complaint dismissed, with costs.

MARTIN, P. J., McAVOY, O'MALLEY and TOWNLEY, JJ, concur.

Judgment unanimously reversed, with costs, and the complaint dismissed, with costs. The findings inconsistent with this determination should be reversed and such new findings made of facts proved upon the trial as are necessary to sustain the judgment hereby awarded. Settle order on notice.