Ron GRUBB and Weatherford Interstate Financial Corporation, Plaintiffs-Appellees,

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION,** Defendant-Appellant.

Nos. 86–1687, 86–1728.

United States Court of Appeals, Tenth Circuit.

Nov. 10, 1987.

Opinion on Denial of Rehearing and Rehearing En Banc Feb. 16, 1988.

Michael Paul Kirschner (Jackie L. Hill, Jr., with him on the briefs) of Hastie and Kirschner, Oklahoma City, Okl., for defendant-appellant.

Terry W. Tippens (Eric S. Eissenstat with him on the briefs) of Fellers, Snider, Blankenship, Bailey & Tippens, Oklahoma City, Okl., for plaintiffs-appellees.

Before SEYMOUR, McWILLIAMS and MOORE, Circuit Judges.

SEYMOUR, Circuit Judge.

Federal Deposit Insurance Corporation (FDIC) has moved this court to exonerate supersedeas bonds posted to secure a stay of execution of the judgments below pending this appeal. FDIC contends that, as an entity of the United States government, it is entitled by 28 U.S.C. § 2408 (1982) to be relieved of the obligation to furnish and maintain security. We disagree with this contention and deny the motion to exonerate.

Plaintiffs Ron Grubb and Weatherford Interstate Financial Corporation (Grubb) instituted this suit for damages against First National Bank & Trust Company of Oklahoma City (FNB), alleging that FNB violated federal and Oklahoma securities laws. Judgment was entered in favor of Grubb,

and FNB appealed. In accordance with Fed.R.Civ.P. 62(d), FNB posted a supersedeas bond to secure a stay of execution of the judgment pending its appeal. The bond provides as follows:

"Pursuant to the Order of the United States District Court ... The First National Bank and Trust Company of Oklahoma City hereby acknowledges its obligation to deposit Two Million Eight Hundred Fifty Thousand Dollars ($2,850,-000.00) in lawful money or negotiable bonds of the United States with the Clerk....

*"The instrument is filed as security for a stay of execution of judgment* pending appeal in the above-named action pursuant to Rule 62(D) [62(d)], Fed. R.Civ.P.

"This obligation arises by virtue of the judgment entered herein on October 31, 1985, in favor of Ronald Grubb against The First National Bank and Trust Company of Oklahoma City in the amount of Two Million Seven Hundred Twenty-Two Thousand Six Hundred Twenty-Nine and 88/100 Dollars ($2,722,629.88)....

"Pursuant to Rule 25(D) [25(d)] of the Rules of the United States District Court for the Western District of Oklahoma, in lieu of corporate surety, The First National Bank and Trust Company of Oklahoma City *hereby deposits a fully secured and negotiable Certificate of Deposit with the Clerk.... Evidence of the fact that the Certificate of Deposit is fully secured will be provided to the Clerk of this Court by the Federal Reserve Bank.* Copies of the certificate of deposit and the pledge receipt are attached hereto and made a part hereof.

*"The condition of this obligation and deposit is such that if The First National Bank and Trust Company of Oklahoma City shall fully perform and comply with said judgment* and the further orders or judgment of this Court in the event the same shall be affirmed in whole or in part, and if The First National Bank and Trust Company of Oklahoma City shall further pay costs, interest and damages for delay if the appeal is dismissed or the judgment is affirmed, or

such judgment as the appellate court may award if the judgment is modified, *then this obligation is void,* and all obligations under this bond are discharged, *otherwise this bond shall remain in full force and effect and the said Certificate of Deposit, or proceeds thereof, and accrued interest thereon shall be used immediately to satisfy all judgments, orders and accruals thereon owned* [sic] *by The First National Bank and Trust Company of Oklahoma City to Ronald Grubb."*

(Emphasis added). Pursuant to the terms of the bond, FNB deposited both the bond and an FNB certificate of deposit (CD) with the district court clerk. The CD was secured by Treasury obligations of the United States owned by FNB. A similar bond and CD were executed and deposited with the clerk to secure a stay of execution pending FNB's appeal of a second judgment awarding Grubb attorneys' fees and post-judgment interest.

After the bonds were deposited with the district court and during FNB's appeal, the Comptroller of the Currency declared FNB insolvent and appointed FDIC as the bank's receiver. Pursuant to the plan for receivership, FDIC transferred the assets of FNB to First Interstate Bank of Oklahoma City (FIB). FIB CDs were substituted for the FNB CDs as collateral for the bonds. The FIB CDs were also secured by United States Treasury obligations. This court granted FDIC's motion to be substituted for FNB as appellant. FDIC then moved us to exonerate the bonds.

FDIC argues that the bonds should be exonerated because of the provisions of 28 U.S.C. § 2408, which provide as follows:

"Security for damages or costs shall not be required of the United States, any department or agency thereof or any party acting under the direction of any such department or agency on the issuance of process or the institution or prosecution of any proceeding."

FDIC claims that it qualifies as an agency of the United States, and that the plain language of section 2408 requires that we exonerate the bonds. For the reasons set

out below, we are not persuaded and therefore deny FDIC's motion.

■ We first address, as a preliminary matter, Grubb's argument that we should not consider the motion to exonerate because FDIC did not first attempt to secure relief in the district court and thus failed to comply with Rule 8(a) of the Federal Rules of Appellate Procedure. The rule provides in part as follows:

> "Application for a stay of the judgment or order of a district court pending appeal, or for approval of a supersedeas bond, or for an order suspending, modifying, restoring or granting an injunction during the pendency of an appeal *must ordinarily be made in the first instance in the district court.* A motion for such relief may be made to the court of appeals or to a judge thereof, but the motion shall show that application to the district court for the relief sought is not practicable, or that the district court has denied an application, or has failed to afford the relief which the applicant requested, with the reasons given by the district court for its action."

Fed.R.App.P. 8(a) (emphasis added). Although we agree that as a general rule matters pertaining to supersedeas bonds should be initially presented to the district court, see Fed.R.App.P. 8(a) advisory committee notes, that general rule applies principally to factual questions, such as the amount or conditions of a bond, because the trial judge who is familiar with the record and the parties is best able to make those judgments. See Cumberland Tel. & Tel. Co. v. Louisiana Pub. Serv. Comm'n, 260 U.S. 212, 219, 43 S.Ct. 75, 77, 67 L.Ed. 217 (1922). Whether the bonds in this case should be exonerated is a question of law, however. In the exercise of our discretion, we elect to decide the exoneration issue without requiring the FDIC to first present it to the trial court.

■ Grubb claims that the bonds and their collateral, once they were deposited as security with the district court, ceased to be property of FNB and therefore are not now assets of the receivership that are available to FDIC for distribution to credi-

tors. Thus, Grubb argues, FDIC has no authority to assert that the security should be released.

Grubb cites as authority for this proposition *Mid-Jersey Nat'l Bank v. Fidelity-Mortgage Investors,* 518 F.2d 640 (3d Cir. 1975), a case arising in the analogous private bankruptcy context. In *Mid-Jersey,* the plaintiff bank was granted summary judgment for the amount owing on an overdue promissory note. The judgment was stayed pending appeal when the defendant made a deposit in court in lieu of a supersedeas bond. The deposit was in the form of a negotiable certificate of deposit. While the appeal was pending, the defendant filed for reorganization under Chapter XI and claimed that the appeal was automatically stayed by Bankruptcy Rule 11–44(a).

The court in *Mid-Jersey* held that the stay required by Rule 11–44(a) extends only to proceedings that could divest the debtor of property over which the bankruptcy court has jurisdiction. *Id.* at 643. The court then stated as follows:

> "The question we must resolve, therefore, is whether the certificate deposited in the district court is the property of the debtor over which the Chapter XI court has exclusive jurisdiction. We hold that, *in the context of this case, such a deposit in court is not the property of the debtor and is not subject to the after-arising jurisdiction of the Chapter XI court.*
>
> . . . .
>
> "Although the legal status of a deposit in court pending an appeal is not entirely pellucid, we are of the opinion that *such a deposit in custodia legis may be considered the res of a trust. The court acts as trustee* and is charged with the duty of determining the beneficiaries pursuant to the appeal."

*Id.* (emphasis added). After reviewing some analogous cases, the court further held that

> "FMI parted with its ownership of the certificate of deposit when the certificate was entrusted to the court. Since then, the only property interest FMI has had in the certificate is a contingent reversion-

ary interest as a potential beneficiary of the trust. Once we have determined that FMI does have an interest in the trust funds, the Chapter XI court would, of course, have jurisdiction over any funds to which the debtor has a rightful claim. At present, however, the Court is able to proceed with determining which party is entitled to receive the trust res and its accumulated interest.

"*Employment of this analysis preserves the function of the deposit as protection for the party prevailing at the trial level from the possibility of future insolvency of the losing party.* At the same time our interpretation does no material damage to the automatic stay provision of Rule 11–44, since the deposit serving as a supersedeas is not available to the reorganization court to aid in the execution of the plan in the Chapter XI proceeding."

*Id.* at 644 (emphasis added). The court concluded that Rule 11–44(a) did not operate to stay the appeal and proceeded to consider the merits.

Grubb also relies on the similar line of reasoning in *Saper v. West*, 263 F.2d 422 (2d Cir.), *cert. denied*, 360 U.S. 916, 79 S.Ct. 1433, 3 L.Ed.2d 1532 (1959). *Saper* was an action by a trustee in bankruptcy to recover as a preference funds that had been deposited with the court clerk pending appeal of a judgment against the defendant, who subsequently declared bankruptcy. The funds were deposited in August 1948, and were distributed to the judgment creditors in November 1950 when their judgment was affirmed. Less than four months later, the defendant filed a petition in bankruptcy. In refusing to declare a preference, the court said:

"It must be emphasized that on and after August 2, 1948, when Foley deposited the sums awarded to West and Long pursuant to the judgment of the California trial court with the clerk of the court, [the judgment debtor's] only possible interest in those funds, according to Judge Herlands, was contingent upon the 'highly remote possibility that the trial court's judgment would be reversed on appeal.' On and after August 2, 1948 there was no possible way in which [the judgment debtor] could transfer these funds to a third party so as to cut off the rights of West and Long until or unless that judgment were reversed."

*Id.* at 427.

We find these analogous cases highly persuasive and consistent with cases involving the insolvency of national banks. In *Ticonic Nat'l Bank v. Sprague*, 303 U.S. 406, 58 S.Ct. 612, 82 L.Ed. 926 (1938), for example, a trust deposit in a national bank was secured by bonds, as required by statute. The bank failed. The Supreme Court held that the trust depositor was entitled to be paid from the bonds as against the claims of general creditors:

"The rule as to the date to which interest is to be allowed on secured claims sharing pro rata with unsecured claims, cannot apply to the disposition of pledged or mortgaged assets subject to the lien of individual creditors, unless we are to disregard the rights in these assets prior to insolvency. But 'liens, equities or rights arising ... prior to insolvency and not in contemplation thereof, are not invalidated.' *Scott v. Armstrong*, 146 U.S. 499, 510 [13 S.Ct. 148, 151, 36 L.Ed. 1059 (1892)]; *Merrill v. National Bank of Jacksonville*, 173 U.S. 131, 145 [19 S.Ct. 360, 366, 43 L.Ed. 640 (1899)]. *By contract or,* as in this case, *by statute, the secured creditors gain or are given a lien on or right in property* 'in addition to their claim against the estate of the bank.' Section 11(k) of the Federal Reserve Act as amended. *The statutory lien prior to receivership withdrew the pledged security from the assets of the bank available to general creditors, in so far as might be necessary to satisfy the lien. Though title to the collateral was in the name of the bank, it was subject to this lien, and to that extent the property pledged could not properly be said to belong to the bank for purposes of distribution to creditors. Scott v. Armstrong, supra* [146 U.S.] at 510 [13 S.Ct. at 151]."

*Id.* at 412–13, 58 S.Ct. at 615 (emphasis added). By analogy to *Ticonic*, even if the

*title* of the CDs or Treasury obligations in this case is in FDIC or FIB, the property nevertheless is not part of the assets available for ratable distribution.[1] In this sense, Grubb is in the position of a secured creditor.[2]

Without citing any authority, the dissent argues that because the underlying debt was not secured, Grubb did not become a secured creditor when it became the beneficiary of the supersedeas bond. We disagree. The dissent's argument overlooks the fact that a debtor and creditor may transform an unsecured debt into a secured debt by agreeing to create a security interest. The creditor gives value for his right to the collateral by acquiring it "as security for or in total or partial satisfaction of a *pre-existing claim.*" J. White & R. Summers, *Uniform Commercial Code* § 23–4 at 915 (2d ed. 1980) (emphasis added) (quoting § 1–201(44)(b) of the 1972 Official Text of the Uniform Commercial Code); *see also* Okla.Stat. tit. 12A, § 1–201(44)(b); *Bank of Lexington v. Jack Adams Aircraft Sales, Inc.* 570 F.2d 1220, 1224–25 (5th Cir.1978). In this case Grubb gave additional value by foregoing the right to immediately collect on the judgment. Thus, after judgment, Grubb and FNB entered into a security agreement that in essence transformed the underlying unsecured debt into a secured debt by agreeing that the bond would, as it stated, secure payment of "all judgments, orders and accruals thereon owed by [FNB] to Ronald Grubb." All of this occurred prior to the declaration of insolvency by the comptroller, and no issue of preference has been raised.

We are persuaded by the cases discussed above that FDIC is without authority to assert that the bonds should be released, notwithstanding section 2408. This result comports with both the rationale of section 2408 and the purpose of supersedeas bonds. The United States is generally entitled to a stay of execution without posting security because judgments against the United States are paid out of a general appropriation to the Treasury set up specifically for that purpose. *See Lightfoot v. Walker*, 797 F.2d 505, 507 (7th Cir.1986). Thus, collections of judgments against the United States are usually less cumbersome and time-consuming than collections of judgments against other entities. In the present case, however, FDIC has conceded that it does not stand ready to pay Grubb's judgment in full if it is affirmed on appeal. *See* Supplemental Authority and Memorandum at 2 (filed May 11, 1987) (FDIC asserts that judgment creditor is entitled only to pro rata share of bank's estate). Moreover, given our view that the bond secures Grubb's judgment and is not available to the receiver as an asset, FDIC can not claim the return of the funds securing the bond.

Exonerating these bonds would undermine the rationale for requiring a bond pending appeal, which is to secure the judgment throughout the appeal process against the possibility of the judgment debtor's insolvency. *See Poplar Grove Planting & Ref. Co. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1190–91 (5th Cir.1979); *J. Perez & Cia., Inc. v. United States*, 578 F.Supp. 1318, 1320 (D.P.R.), *aff'd*, 747 F.2d 813 (1st Cir.1984); *see also* 7

---

1. The dissent attempts to distinguish *Ticonic* because the lien there was created by statute. For the purposes of this case, we see no distinction between a lien created by statute and a lien created by a contract (the bond) that is required by the court as a condition of staying execution of the judgment.

2. *Ticonic* is also instructive concerning the extent of protection afforded a secured creditor such as Grubb. Although, in general, creditors of an insolvent national bank are not entitled to interest on their claims accruing after the date of insolvency, a secured creditor *is* entitled to interest on its claim to the extent of its security, regardless of whether that interest accrues be-

fore or after insolvency. *See Ticonic*, 303 U.S. at 411–13, 58 S.Ct. at 614–15. To the extent that the principal and interest exceed the amount of the security, however, the claim of a secured creditor will be treated just like that of any other creditor. Accordingly, Grubb's judgments against FNB and the interest on those judgments are protected by the security already pledged by FNB, but Grubb is entitled to no additional security to protect interest accruing beyond the amount of the original CDs. A pledge of additional security would require an improper removal of assets from the receivership.

J. Moore & J. Lucas, Moore's Federal Practice ¶ 62.06, at 62–33 to –34 (2d ed. 1985). Allowing exoneration of these bonds would thus defeat the very purpose for which they were provided.[3]

The motion to exonerate is denied.

**JOHN P. MOORE, Circuit Judge, dissenting:**

I must respectfully dissent for two reasons. First, I believe the court has blurred the essential nature of a supersedeas bond and in the blurring allowed Grubb more than the bond provided. Second, I believe the court has failed to recognize the patina that formal insolvency proceedings gives this case. That failure incorrectly changes Grubb's status as an unsecured creditor to that of a secured creditor and results in giving Grubb a greater share of the insolvency estate to the detriment of similarly situated creditors of the unsecured class. In the course of reaching my opinion, I have found distinctions in the cases relied upon by the court which I believe make them inapposite here.

Any analysis of the problem before us must begin with an examination of the nature of a supersedeas bond.[1] The court holds that the bond secures Grubb's judgment. I would concur with this conclusion if the holding is construed to mean the bond secures *the promise* to pay the judgment. *See* 4A C.J.S. *Appeal & Error* § 643, at 464 (1957). However, the court then transmutes the bond into security for *the debt* underlying the judgment. This is where I part company with the court because the transmutation is contrary to the nature of a supersedeas bond.

"Liability under an appeal or supersedeas bond is strictly determinable by the express terms of the contract of undertaking.

The obligation is upon the *undertaking*, an instrument in writing, not upon the *judgment*." 5 Am.Jur.2d *Appeal & Error* § 1029, at 453–54 (1962) (emphasis added). Because the debt owed Grubb was unliquidated until judgment was entered and because that debt was not secured by any security instrument making the debt a secured obligation under Oklahoma law (*see* Okla.Stat.Ann. tit. 12A, §§ 9–105(1)(i) and 1–201(37) (Supp.1984)), the judgment can in no way be considered or become a secured claim in the FNB insolvency.

The court, however, in the transmutation has made the claim a secured claim by effectively holding that the obligation of the supersedeas bonds is on the judgment. In other words, the court holds that because of the liability created by the supersedeas bond, the formerly unsecured claim of Grubb has become vested with the attributes of a debt protected by a security interest.

Ordinarily, the distinction I draw between liability on the undertaking and liability on the debt makes little practical difference. If a judgment debtor fails to obtain a reversal and then defaults on the payment of the judgment, the surety on the supersedeas bond becomes liable to the judgment creditor. In the eyes of the judgment creditor, it is insignificant how or by whom the judgment debt is satisfied so long as it is paid. Thus, in the case in which during the pendency of an appeal a judgment debtor becomes unable to pay debts but does not resort to an insolvency proceeding to deal with those debts, a supersedeas bond functions to protect the judgment creditor who has been stayed from collecting upon the judgment.

---

**3.** Under the result advocated in the dissent, a supersedeas bond posted by a financially troubled national bank provides no protection for the judgment creditor. If the dissent's position were the rule, trial courts would not grant stays of execution to potentially insolvent national banks, because any supersedeas bond posted by such a bank would not serve the purpose for which these bonds are intended. Instead, the banks would be forced to pay trial court judg-

ments immediately, possibly driving them further toward insolvency.

**1.** Since it is critical to my later discussion, there is no disagreement raised in any quarter that we are dealing with supersedeas bonds. What is unique about this case is that the *collateral* for the bonds was deposited with the clerk of the district court. While the distinction appears insignificant at first, I shall later demonstrate its importance.

Yet, it cannot be gainsaid that in this latter case the creditor has been made whole because of the obligation of the supersedeas bond, and not because the debt owed to the creditor was a secured obligation upon which the creditor has foreclosed. The judgment creditor who is protected by a supersedeas bond is a beneficiary of the undertaking, and not a creditor holding a security interest in property to enforce payment of a debt. Indeed,

> [t]he purpose of a supersedeas bond is to preserve the status quo while protecting the non-appealing party's rights pending appeal. A judgment debtor who wishes to appeal may use the bond to avoid the risk of satisfying the judgment only to find that restitution is impossible after reversal on appeal. At the same time, *the bond secures the prevailing party against any loss sustained as a result of being forced to forgo execution on a judgment during the course of an ineffectual appeal.*

*Poplar Grove Planting & Refining Co. v. Bache Halsey Stuart, Inc.,* 600 F.2d 1189, 1190–91 (5th Cir.1979) (emphasis added). I view that distinction to be critical in the instance in which a formal insolvency proceeding has intervened between the entry of a judgment and the final determination of an appeal.

If we examine, as we must, the precise terms of the contract of undertaking here, we find that FNB undertook to "fully perform and comply with [the] judgment and the further orders or judgment of this Court in the event the same shall be affirmed in whole or in part." That promise contained in that undertaking is *separate* from the judgment; it was made *after* creation of the judgment debt; and it is nothing more than an undertaking to satisfy the judgment if it is not reversed on appeal. It is *that* promise, not the judgment debt, which is collateralized by the CDs FDIC now claims as estate property. I respectfully suggest that the court has overlooked this distinction in its analysis.

The distinction is important here because if the CDs are collateral for the debt, Grubb is a secured creditor of the insolvent estate with a right to claim the benefits of the collateral against FNB's unsecured creditors. Contrarily, if the underlying judgment debt is unsecured and if Grubb's interest in the CDs is only as a beneficiary of a promise made after the debt was created, Grubb must be considered an unsecured creditor of FNB subject to the rules for liquidation of the claims against an insolvent national banking association. Moreover, if Grubb's debt was secured before the appointment of FDIC, FDIC's claim to the CDs as assets of the receivership estate is subject to Grubb's security interest.

By construing the supersedeas bonds as an undertaking to secure the judgment debt and not as security for the promise to pay that debt, the court has given Grubb more protection than the terms of the bonds provide. Additionally, the court effectively has deprived the receivership of assets which should be made available to all the unsecured creditors of that estate. I believe this result is not warranted and is unsupported by a close examination of the authorities upon which the court has relied.

The court draws support from *Mid-Jersey Nat'l Bank v. Fidelity-Mortgage Investors,* 518 F.2d 640 (3d Cir.1975). I find this case inapposite simply because there was no undertaking by the judgment debtor. In *Mid-Jersey,* the judgment debtor requested relief from filing a formal supersedeas bond. In its place, the debtor conveyed to the court negotiable certificates of deposit *payable to the clerk of the court* to secure the stay. By contrast, here the bonds given are precise in the extent of the liability they created and were collateralized with specific property. The collateral was transferred to the *possession* of the court to hold pending appeal, but the judgment debtor effected no conveyance of the collateral to the court. In *Mid-Jersey,* the stay was secured by property; in this case, the stay is secured by a bond. Hence, when the *Mid-Jersey* court stated: *"[I]n the context of this case,* such a deposit is not the property of the debtor," *Id.* at 643 (emphasis added), it was saying the debtor had relinquished its property to the court in place of giving a bond. Indeed, the court

stated the judgment debtor "part[ed] with its ownership." *Id.* at 644. This parting is one of the controlling aspects of *Mid-Jersey.*

Under the circumstance of the judgment debtor's conveyance of its ownership rights, the *Mid-Jersey* court could properly find that the property was not subject to the judgment debtor's insolvency proceedings because the property had been relinquished prior to the date of insolvency. In the instant case, however, FNB did not relinquish a property interest in the CDs to the court; it merely transferred *possession* for the purpose of collateralizing the bonds.

This case is not one in which FNB's property rights, and those of its successor receiver, were divested by surrender, nor did the giving of the bond result in a constructive trust. In part, the holding of the *Mid-Jersey* court was predicated upon its conclusion that the conveyance of property to a court to secure a stay results in a trust in which the court is vested with a duty to the beneficiaries. I believe that conclusion must be read in the context of the fact of the debtor's divestment of interests which is not present in the instant case. Because of this important distinction, I do not believe *Mid-Jersey* supports this court's conclusion. The same distinctions are present in *Saper v. West,* 263 F.2d 422 (2d Cir.), *cert. denied,* 360 U.S. 916, 79 S.Ct. 1433, 3 L.Ed.2d 1532 (1959), relied upon by the court, making that case equally inapposite.[2]

I concede when a judgment debtor has relinquished ownership of property, regardless of the method, and retains no proprietary interest in the property, the problem which concerns me in this case does not exist. I judge that to be the proposition for which both *Mid-Jersey* and *Saper* stand. I cannot agree with this court's holding, however, that the simple act of using property as collateral works the same divestment. The party giving the

collateral still retains an ownership interest in the property despite the pledge. The most that can be said for the deposit in this instance is that it created a right of defeasance of FNB's property interest upon the condition of its default on the undertaking in the supersedeas bond. Nonetheless, FNB still retained ownership of the CDs.

Finally, the court relies upon *Ticonic Nat'l Bank v. Sprague,* 303 U.S. 406, 58 S.Ct. 612, 82 L.Ed. 926 (1938), for the proposition that even if the title to the CDs is in FDIC, the CDs can nonetheless be omitted from the receivership. Facially, *Ticonic* would support that proposition but for one critical fact not present here. Although *Ticonic* did not involve the precise question present in this case, it did involve consideration of the rights of creditors following the insolvency of a national bank. Prior to insolvency, the bank had held certain trust deposits which were collateralized by United States bonds. The collateral was required by the Federal Reserve Act which stated: "In the event of the failure of such bank the owners of the funds held in trust for investment *shall have a lien on the bonds* . . . so set apart in addition to their claim against the estate of the bank." 12 U.S.C. § 248(k) (1918), *quoted in Ticonic,* 303 U.S. at 408, 58 S.Ct. at 613 (emphasis added). As a consequence of this statutory provision, when the Ticonic bank became insolvent, by operation of law the trust depositors became lien holders of the bonds which secured their deposits. It is for that reason the Court held the deposits were secured and the depositors had a right to recover their claims from the proceeds of the bonds. The Court did not hold, as the majority here implies, that the depositors were secured creditors of the bank simply because their accounts were collateralized. The statute granting a lien—a security interest—in those bonds was the instrument by which the trust depositors became secured creditors of the failed bank. This distinction has been ignored by this court when it suggests *Ticonic* simply held "that the trust depositor was entitled to be paid from the bonds as against the claims of

---

2. In *Saper,* a bankruptcy trustee sued to recover, as a preferential transfer, funds paid into court and transferred to judgment creditors in satisfaction of a judgment. As noted by the *Saper* court, there was a *complete conveyance* to the court of all the judgment debtor's property

interests in the funds which were subjected to the trustee's recovery efforts. Thus, the critical circumstances are remarkably dissimilar to those present here because the judgment debtor had relinquished all ownership interests prior to insolvency.

general creditors." *Ante,* at 225. I believe this reading of *Ticonic* is an oversimplification that fails to give cognizance to the significance of the statutorily created security interest that gave the trust depositors their right of recovery.

Those trust depositors were secured creditors at the time of insolvency because they possessed valid security interests not held by the general creditors of the bank. This court can point to no similar interest held by Grubb which secured the judgment *debt* and which allows Grubb to recover that debt "against the claims of general creditors." *Ante,* at 225. The court adds to the obfuscation of the importance of the existence of the statutory lien with the statement: "For the purpose of this case, we see no distinction between a lien created by statute and a lien created by a contract [the bond] that is required by the court as a condition of staying execution of the judgment." The distinction, however, is that the bond does not secure the underlying debt. As I initially have pointed out, and as the court has not refuted, the whole purpose of a supersedeas bond is to secure the *promise* made by the appellant to obtain the stay. The court may not see the distinction as relevant, but I do. It must be remembered, the only security given Grubb was the security for the promise to pay the judgment debt. That promise created an obligation wholly separate from the judgment debt which arose from a jury verdict finding the bank guilty of a securities fraud. To me, it is inescapable that the debt arising from that judgment is and should remain an unsecured obligation.

The court claims, however, that what was once an unsecured obligation can be converted to a secured debt by agreement of the parties, thus protecting one creditor against claims of others. Except to the extent such a transaction would constitute a voidable preference in a liquidation proceeding, I take no issue with that claim. That is not what happened here, however, because the bond can apply only to the promise to pay the judgment. Moreover, the bond was the consideration given to secure the stay, and not to secure the debt. The court suggests to the contrary by stating "Grubb gave additional value by foregoing the right to immediately collect on the judgment." Indeed, but this forbearance was the consideration for the bond. Without the bond, the promise to pay the judgment would not have resulted in the stay, and without the promise to pay, the debt would have been immediately collecta-

ble. Any attempt to sweep the promise to pay the judgment and the underlying debt into one pile is an expedient which ignores a legal distinction I strongly believe must be preserved, regardless of any hypothetical societal consequence preservation might work on banks which become insolvent in future.

Because Grubb can claim no actual property interest in the CDs, whether by operation of law, as in *Ticonic,* or by actual relinquishment and conveyance, as in *Mid-Jersey* and *Saper,* Grubb's judgment debt cannot be given preferential treatment over those of the general creditors of the receivership. Moreover, FNB retained its ownership of the CDs prior to creation of the receivership, and that ownership passed to FDIC with the declaration of insolvency. 10 Am.Jur.2d *Banks* § 768, at 732 (1963). The CDs are part of the insolvency estate, and Grubb must resort to the liquidation proceedings for satisfaction of that debt if the judgment is affirmed on appeal. Any other construct abuses the tenor of the supersedeas bond given in this case.

The court seeks to avoid this conclusion with the notion that contrary results are compatible with 28 U.S.C. § 2408 and the purpose of supersedeas bonds. I cannot agree. First, because of what I previously referred to as the "patina of insolvency proceedings," the application of § 2408 here has nothing to do with the ability of the United States to pay Grubb's judgment. While I would not quarrel with the court's interpretation of § 2408 as a general proposition, the insolvency proceedings create a different situation. Here, the United States suffers a legal impediment to payment of Grubb in full unless the assets in the insolvency estate are sufficient to pay *all* unsecured creditors in full. This impediment should be a reason to grant, rather than deny, the pending motion.

While I sympathize with Grubb's plight, I do not believe sympathy should stand in the way of the law. Grubb has unfortunately been caught in the vicissitude of FNB's insolvency. Had Grubb recovered on the judgment prior to insolvency, Grubb may have escaped inclusion in the insolvency proceedings. Yet, the fact that recovery did not occur makes Grubb's position entirely different from that of a judgment creditor whose debtor simply defaulted on its promise to pay the judgment. I would grant the motion because it is the insolvency proceeding, and not the act of exoneration, which defeats Grubb's interest in the CDs.

**OPINION ON REHEARING**

Before SEYMOUR, McWILLIAMS and MOORE, Circuit Judges.

SEYMOUR, Circuit Judge.

On petition for rehearing, with an en banc suggestion, the FDIC now makes an entirely new argument in support of its motion to exonerate the bonds. It contends that a national bank may never be required to post a bond pending appeal because of 12 U.S.C. § 91. *See Butler v. Coleman*, 124 U.S. 721, 8 S.Ct. 718, 31 L.Ed. 567 (1888); *United States v. Lemaire*, 826 F.2d 387 (5th Cir.1987). *But see Third National Bank v. IMPAC Limited, Inc.*, 432 U.S. 312, 97 S.Ct. 2307, 53 L.Ed.2d 368 (1977). We decline to address an issue not raised prior to the petition for rehearing.

The panel is not persuaded to grant rehearing on any other issue raised in the petition for rehearing. The petition for rehearing having been denied by the panel to whom the case was argued and submitted, and no member of the panel nor judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, *see* Fed.R.App.P. 35, the suggestion for rehearing en banc is denied.