AmWEST SAVINGS
ASSOCIATION, Plaintiff,

v.

FARMERS MARKET OF ODESSA,
INC., Roy R. Taylor, and Nora L.
Patterson, Defendants,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Banc Home Savings Association, Counter-Defendant.

No. MO-90-CA-084.

United States District Court,
W.D. Texas,
Midland-Odessa Division.

Dec. 19, 1990.

Elizabeth G. Gammon, John C. Hampton and Shannon M. Sanders, West, Adams, Webb & Albritton, P.C., Bryan, Tex., for movant Federal Deposit Ins. Corp., as Receiver for Banc Home Sav. Ass'n.

Roy R. Taylor, Nora L. Patterson, Roger Jatko and Keith Wilson, Bell & Jatko, P.C., Odessa, Tex., for defendant Farmers Market of Odessa, Inc.

Martin S. Wozniak, Boyd, Sanders, Wade, Cropper & Prothro, P.C., Midland, Tex., for plaintiff AmWest Sav. Ass'n.

## AMENDED MEMORANDUM OPINION AND ORDER

BUNTON, Chief Judge.

BEFORE THIS COURT is the Counter-Defendant Federal Deposit Insurance Corporation ("FDIC") as Receiver for Banc Home Savings Association with its Motion for Summary Judgment in the above-captioned cause. Defendants and Counter-Plaintiffs Farmers Market of Odessa, Inc., ("Farmers Market") Roy R. Taylor, ("Taylor") and Nora L. Patterson ("Patterson") responded in a timely manner. Upon consideration of the pleadings, evidence offered by the parties in support of their arguments, and the controlling law, the Court is of the opinion the FDIC/Receiver's Motion for Summary Judgment is meritorious and should therefore be GRANTED.

## BACKGROUND

Farmers Market by its President Taylor executed a promissory note in the amount of $127,000.00 in favor of Plaintiff, Banc Home Savings Association, formerly known as Home Savings Association on July 29, 1983. On this same date, Taylor and Patterson ("Counter Claimants") entered into a guaranty agreement with Banc Home. Finally, Farmers Market, by and through, Taylor executed and delivered a Deed of Trust to Banc Home listing certain real property as security for the note. Farmers Market later defaulted on this Note, and the property was sold at foreclosure for $150,000.00. After application

of the proceeds of the sale, a $54,093.00 deficiency existed.

On September 30, 1985, Banc Home filed this lawsuit seeking recovery from Farmers Market under the Note and Deed of Trust, and against Taylor and Patterson as guarantors for the deficiency. Taylor and Patterson counterclaimed alleging the original guaranty was forged or altered after the time of the loan closing, from a corporate guaranty of an individual debt to an individual guaranty of an individual debt. Counter claimants also assert claims for fraud, bad faith, alteration, unjust enrichment, inadequate bid price or wrongful foreclosure, emotional distress, attorney's fees and exemplary damages.

On December 22, 1987, in the trial of the case, the jury found against Banc Home by returning a verdict with a finding no deficiency existed. The jury found Banc Home altered the guaranty without the consent of Taylor and Patterson, and Banc Home knew or should have known the guaranty was altered at the time the lawsuit was filed. The jury further found Banc Home acted in bad faith in filing the suit against Taylor and Patterson. Taylor and Patterson were each awarded $25,000.00 for damages suffered to their credit standing and reputation, as well as mental anguish. In addition each was awarded $175,000.00 in punitive damages. Lawyers Title received a directed verdict in the State Court action.

Banc Home appealed the judgment to the 8th Court of Appeals, El Paso, Texas and in lieu of a supersedeas bond, negotiable securities were deposited by Banc Home with the Clerk of the trial court. ("Supersedeas Bond"). Prior to the hearing of arguments on the appeal, Banc Home was declared insolvent pursuant to a resolution adopted by the Federal Home Loan Bank Board ("FHLBB") and the Federal Savings and Loan Insurance Corporation ("FSLIC") was appointed as Receiver for Banc Home ("FSLIC/Receiver"). As such, the FSLIC/Receiver became the holder of all of Banc Home's assets and liabilities, with authority to "institute, prosecute, maintain, defend, intervene and otherwise participate in any and all actions, suits, or other legal proceedings by and against the Receiver or such institution." On the same day, AmWest Savings Association, formerly known as Olney Savings and Loan Association ("AmWest") was created as a new federally chartered savings bank. FSLIC/Receiver entered into an Acquisition Agreement with AmWest whereby AmWest acquired substantially all of the assets, secured deposits, and certain tax liabilities of Banc Home, including the notes and liens made the basis of this suit. FSLIC/Receiver, however retained all general unsecured claims, demands and causes of actions for monetary damages against Banc Home, including the causes of action asserted by Taylor and Patterson, and AmWest assumed Banc Home's liabilities to secured creditors and depositors.

FSLIC/Receiver became a party of interest in this case as Plaintiff on October 14, 1988, by virtue of its appointment as Receiver for Banc Home, and filed a Notice of Removal to the United States District Court for the Western District of Texas, Midland–Odessa Division on November 10, 1988. This Court, however, determined the case should not be removed pending an appeal of the state court action, and remanded the case to the 8th Court of Appeals on November 22, 1988. FSLIC/Receiver was then substituted in place of Banc Home on November 28, 1988 in the pending appeal. On December 7, 1988, AmWest substituted in as the real party in interest in place of FSLIC/Receiver, to protect its interests in the Note, Guaranty Agreement, Deed of Trust and Supersedeas Bond securing the adverse judgment. On appeal, the 8th Court of Appeals, in El Paso, on January 25, 1989, reversed the judgment of the trial court and remanded the case for a new trial. Taylor, Patterson and Farmers Market filed an Application for Writ of Error to the Supreme Court of Texas on March 17, 1989, which was denied on February 14, 1990. The Motion for Rehearing was denied on March 21, 1990, and the mandate was issued on April 30, 1990 by the Court of Appeals.

Between the filing of the Application for Writ of Error and its denial, on August 9,

1989, the Financial Institutions Reform, Recovery and Enforcement Act of 1989 was enacted, and the Federal Deposit Insurance Corporation as manager of the FSLIC Resolution Fund, as Receiver for Banc Home, succeeded the Federal Savings and Loan Insurance Corporation as receiver for Banc Home. 12 U.S.C. § 1821(a)(1) and (a)(2)(A) as amended by § 215 of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), Pub.L. 101–73, 103 Stat. 183 (1989). Section 215 of the Act provides all assets and liabilities of the FSLIC on the day prior to the date of the enactment will transfer to the Federal Savings and Loan Insurance Resolution Fund ("FSLIC Resolution Fund"). Section 215 also provides the FDIC shall be manager of the FSLIC Resolution Fund. The Act also provides any pending suit by or against FSLIC shall not abate but the appropriate successor to the rights of the FSLIC shall be substituted for FSLIC. *See* Section 401(f)(2).

This Court dismissed Lawyers Title from the lawsuit on May 30, 1990, because the directed verdict granted in the trial court was affirmed by the 8th Court of Appeals.

### COUNTER–DEFENDANTS MOTION

In its Motion, FDIC/Receiver claims summary judgment is warranted on four independent grounds:

1. Dismissal under 12 U.S.C. § 1821(i)(2), for the reason the assets from Banc Home would be insufficient to pay the amounts owed to secured creditors and depositors, therefore Taylor and Patterson's unsecured claims would not receive anything.

2. Dismissal on Prudential Grounds, for the reason the FDIC/Receiver has transferred all of its rights to pursue claims inherited from Banc Home; therefore, no possibility exists the FDIC/Receiver will ever recover any funds in the future which would be available for distribution to unsecured creditors.

3. Dismissal of Claims against FDIC/Receiver for Equitable Relief, because FSLIC/Receiver transferred to AmWest, assets which included the note, guaranty, deed of trust and supersedeas bond, therefore, AmWest is the holder and owner of those assets and the proper party against whom Taylor and Patterson must seek equitable relief, including unjust enrichment.

4. Dismissal of claims under the *D'Oench Duhme* doctrine [1], 12 U.S.C. § 1823(e), 12 U.S.C. § 1821(d)(9)(A) and the Holder in Due Course Doctrine, which operate as a bar to any claim based on an oral agreement tending to limit FDIC/Receiver's recovery on an asset of a failed thrift.

In response, Taylor and Patterson contend their counterclaims are "secured" and therefore AmWest, not FDIC/Receiver is liable under the Acquisition Agreement. Defendants claim the Judgment against Banc Home in the trial Court, the posting of the supersedeas bond and the FDIC/Receiver's admission of the secured nature of the claim in response to a query by the Court of Appeals, when combined prove the "secured" nature of their counterclaims.

AmWest filed a Motion to Stay the Suit for Deficiency pending review by the Fifth Circuit of the claims of Taylor and Patterson. Specifically, if the Fifth Circuit holds the counterclaims are unsecured and pass to the FDIC/Receiver, then AmWest will dismiss any suit for the deficiency. Thus the only claims before this Court today are the counterclaims of Taylor and Patterson, and not the suit to recover the deficiency on the promissory note or any of the corresponding defenses of the Defendants.

### STANDARD ON MOTION FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions of file, together with the affidavits, if any, show

---

**1.** *D'Oench Duhme & Co., Inc. v. Federal Deposit Insurance Corporation,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942).

that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Rule 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Thus, the focus of this court is upon disputes over material facts; facts which might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 272 (5th Cir.1987), *cert. denied,* 484 U.S. 851, 108 S.Ct. 152, 98 L.Ed.2d 107 (1987), and the cases cited therein.

The Supreme Court's 1986 trilogy of summary judgment cases clarified the test for granting summary judgment. In *Anderson v. Liberty Lobby, Inc.*, the Court stated the trial court must consider the substantive burden of proof imposed of the party making the claim.

*Anderson v. Liberty Lobby* requires this Court to substantively evaluate the evidence offered by the moving and non-moving party to determine whether the evidence raises a "material" fact question which is "genuine". The *Anderson* court defined "material" as involving a "dispute over facts which may affect the outcome of the suit under the governing law."

In a second case, the Supreme Court reiterated where the party moving for summary judgment has established prima facie there is no genuine issue as to any material fact, the non-moving party must then come forward with "specific facts" showing a genuine issue for trial. It must be "more than simply ... there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The third case in the trilogy, *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) held where the moving party shows the opposing party is unable to produce the evidence in support of its case, summary judgment is appropriate. In *Celotex Corp.*, it was not necessary for the motion for summary judgment to be supported by affidavits or other material specifically negating the non-moving party's claim so long as the District Court was satisfied there was an absence of evidence to support it. At this point, the burden shifted to the non-moving party to produce evidence in support of its claims; if it did not produce any, summary judgment was required.

This Court has demonstrated its willingness to allow a non-moving party his day in court in borderline cases where, under the governing law or reasonable extensions of existing laws, the hearing of some testimony would be helpful to understanding the proper application of the law. Such is not the case in the suit *sub judice*, with respect to the Defendants counterclaims.

## DISCUSSION

■ It is apparent, the first issue for resolution in this Court is the "secured" vs. "unsecured" nature of the Taylor and Patterson counterclaims. Taylor and Patterson contend the nature of the liabilities on their claims could not be changed during the course of the lawsuit to a matured general unsecured liability.

Specifically, Counter claimants contend at the time of the receivership, their claims were secured, because: (1) they had a judgment against Banc Home; (2) had an abstract of judgment which placed a legal lien on all of Banc Home's assets; and (3) Banc Home posted a supersedeas deposit. Taylor and Patterson compare this with the filing of a bankruptcy, wherein on the date of the filing all assets become the property of the trustee. They argue the reversal and remand of the trial court's judgment does not make their claims unsecured, and the proper time to determine the nature of their claim is the date of receivership and not thereafter. Thus, they contend on the

date of filing the receivership, Taylor and Patterson were secured creditors.

FDIC/Receiver argues the supersedeas bond only secures the judgment if the judgment is affirmed on appeal; on remand the dispute between the parties is retried as an unliquidated claim. Thus, the reversal of the judgment created a matured general unsecured liability against the Receiver.

At the time of the receivership, Banc Home was involved in the appeal of the Ector County District Court's Judgment to the El Paso Court of Appeals. Banc Home was required to post a supersedeas bond with the District Court of Ector County, Texas to supersede the enforcement of the judgment pending the appeal. Counter claimants cite the cases of *Olney Sav. & Loan Ass'n v. Trinity Bank Sav. Ass'n*, 885 F.2d 266, 274 (5th Cir.1989) and *Grubb v. Federal Deposit Ins. Corp.*, 833 F.2d 222, 226 (10th Cir.1987), for the proposition the claim should be determined on the date of the receivership. Both *Olney* and *Grubb* involve situations wherein the FDIC was not allowed to exercise control over funds securing a judgment while the case was pending on appeal. Unfortunately for cross claimants, in the cited cases, the judgment of the trial court was affirmed by the appellate court, here it was reversed.

This Court is of the opinion, prior to the reversal of the trial court's judgment, counter claimants claims were secured. However, when the Courts of Appeals reversed the trial court's judgment, the status of the counter claimants claims converted to a general unsecured liability for which recourse against the Receiver was necessary. In a case similar to this one the 5th Circuit stated:

> On the original appeal, there were no damages awarded. Instead, all of the damages were either reversed or vacated for a new trial. Under comparable facts, we said in *LaSalle Pump*, 804 F.2d at 317, "[o]nce the appellate court reverses the original judgment, no enforceable judgment exists and a new trial—even though perhaps limited to damages—must be held." Here, there was no judgment, in terms of money damages, to

enforce after the appeal. Instead, a new trial was necessary. The bond, limited by its explicit terms to the judgment of the court of appeals, was discharged.

*Neeley v. Bankers Trust Co.*, 848 F.2d 658, 659 (5th Cir.1988) (quoting *Aetna Casualty & Ins. Co. v. LaSalle Pump & Supply Co.*, 804 F.2d 315, 317 (5th Cir.1986)). In the instant case, there were no damages awarded by the court of appeals; the case was simply reversed and remanded for a new trial. It is the opinion of this Court, the supersedeas bond posted by Banc Home and defended by Amwest, was discharged and must therefore, be released. Thus, the basis for Taylor and Patterson's claims, that their claims are secured because of the supersedeas bond, trial court judgment and abstract of judgment lien, must fail. When the Court of Appeals issued the mandate, the supersedeas bond was released, ceased to secure the vacated judgment and the counterclaims of Taylor and Patterson became general unsecured liabilities against the FDIC/Receiver.

## SUMMARY JUDGMENT UNDER D'OENCH & § 1823(e)

This Court shall now turn to the FDIC/Receiver's Motion for Summary Judgment against the counterclaims of Taylor and Patterson, based on the doctrine of *D'Oench Duhme*, and 12 U.S.C. § 1823(e).

The *D'Oench Duhme* doctrine holds parties to a note with a failed bank may not assert agreements or promises not on the records of a failed institution. The doctrine protects the FDIC from agreements between the bank and a borrower not readily available to the FDIC and allows the FDIC to make its decision with regard to the assets of a failed bank in a quick and efficient manner. *D'Oench Duhme & Co., Inc. v. Federal Deposit Insurance Corporation*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). The *D'Oench Duhme* doctrine is now supplemented by the statutory codification found in 12 USC § 1823(e), which section sets out four requirements must be met before a defense to FDIC recovery may be asserted. § 1823(e) states:

No agreement which tends to diminish or defeat the right, title, or interest of the FDIC and any asset acquired by it under this section, either as security for a loan or by a purchase, shall be valid against the FDIC unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the Board of Directors of the bank or its loan committee which approval shall be reflected in the minutes of said board or committee and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

All four requirements of § 1823(e) must be satisfied for an agreement or defense to be enforceable. *FDIC v. de Jesus Velez,* 678 F.2d 371 (1st Cir.1982).

The *D'Oench* doctrine and § 1823(e) are often applied to affirmative claims for relief against the FDIC/Receiver, as well as counterclaims, like the ones asserted by Taylor and Patterson in the instant case. *Bell & Murphy & Assoc. v. Interfirst Bank Gateway,* 894 F.2d 750, 754 (5th Cir. 1990); *Black v. FDIC,* 640 F.2d 699 (5th Cir.1981); cf *FDIC v. Roldan–Fonseca,* 795 F.2d 1102 (1st Cir.1986). Taylor and Patterson's claims for fraud, bad faith, emotional distress, attorneys' fees and exemplary damages, seem to fall squarely within the provisions of *D'Oench* and § 1823(e). These claims are based upon agreements or the conduct of Banc Home's employees or third parties, and are outside the note itself, they cannot form the basis of a claim against the FDIC/Receiver. *Beighley v. FDIC,* 676 F.Supp. 130 (N.D.Tex.1987), *aff'd,* 868 F.2d 776 (5th Cir.1989). In *Beighley,* the makers of a note brought an action for damages and for equitable relief against a bank for breach of contract, common law fraud, fraud under the DTPA, breach of fiduciary duty, promissory estoppel and breach of agency contract. The Court held § 1823(e) barred the makers action. *Beighley,* 676 F.Supp at 132.

As for Taylor and Patterson's claims of alteration, unjust enrichment, inadequate bid price or wrongful foreclosure, this Court is of the opinion these actions of Banc Home, which took place prior to the FDIC/Receiver's takeover, may not be asserted against the FDIC/Receiver. Other Courts have come to a similar conclusion. For example, in *Federal Deposit Insurance Corp. v. Coble,* 720 F.Supp. 748 (E.D. Mo.1989), the Court found affirmative defenses against officers of a failed bank which took place prior to the Commissioner's determination of the bank's insolvency were "a logical non sequitur." *See also: Matter of CTS Truss, Inc.,* 868 F.2d 146 (5th Cir.1989) (even if the principles of equitable subordination otherwise permitted the imputation of wrongful conduct to a transferee such as the FDIC, 12 U.S.C. § 1823(e) forbids this result). Recently, Texas courts have applied *D'Oench* to preclude claims of wrongful foreclosure. *See NCNB Tex. Nat'l Bank v. Campise,* 788 S.W.2d 115 (Tex.App.—Houston 1990); *FSLIC v. Stone,* 787 S.W.2d 475, 489–90 (Tex.App.—Dallas 1990).

■ Further, as argued by the FDIC/Receiver, this Court has accorded the FDIC/Receiver "holder in due course" status with respect to the instruments it acquires in a purchase and assumption agreement. *Federal Deposit Insurance Corp. v. Eagle Properties, Ltd.,* 664 F.Supp. 1027, 1036 (W.D.Tex.1985). *Accord, FDIC v. Cremona Co.,* 832 F.2d 959, 964 (6th Cir.1987), *cert. dism'd sub nom., Gonda v. FDIC,* 485 U.S. 1017, 108 S.Ct. 1494, 99 L.Ed.2d 883 (1988); *FSLIC v. Murray,* 853 F.2d 1251 (5th Cir.1988). A holder in due course takes an instrument for value, in good faith, and without notice of any defense against it or claims to it. U.C.C. § 3–302(1); *FSLIC v. Murray,* 853 F.2d at 1256. Accordingly, this Court finds the FDIC/Receiver is a holder in due course and acquired the note free of the counterclaims of Taylor and Patterson.

## DISMISSAL OF CLAIMS

■ FDIC/Receiver also argues this Court may dismiss the claims under 12

U.S.C. § 1821(i) because the assets from Banc Home would be insufficient to pay the amounts owed to secured creditors and depositors, therefore Taylor and Patterson's unsecured claims would not receive anything.

Because the Federal Home Loan Bank Board's ("FHLBB") determined the priorities for the payment of creditors established by 12 C.F.R. § 569v.11, the FHLBB's priority regulations and by adopting Tex. Rev.Civ.Stat.Ann. art. 852a, § 8.09(g) (Vernon Supp.1990), the Texas priority statute, FHLBB determined if Banc Home were liquidated there were no assets available for general creditors and depositors.

The Bank Board based its conclusions on information in the administrative record before it regarding the assets and liabilities of Banc Home. This information was set forth in a monthly report of financial condition dated June 1988, which was filed by Banc Home pursuant to FSLIC regulations. As Section F of the Report shows, Banc Home had total assets of $647,580,000.00, however, it also had total liabilities of $721,070,000.00 with liabilities to depositors alone of $689,304,000.00 and secured liabilities in the form of Federal Home Loan Bank advances and reverse repurchase agreements, of $19,460.00.

Those numbers make it very clear if the receiver had liquidated the assets individually and distributed the proceeds to creditors in the order required by the Texas Statute, the assets would have been exhausted long before the liabilities to secured creditors and depositors were satisfied. Therefore, under the required priorities, unsecured creditors would have been entitled to receive nothing on their claims, even if those claims were valid, which is exactly what the FHLBB formally determined in Resolution No. 88–1130P. FDIC/Receiver's Motion for Summary Judgment, p. 9 (filed August 20, 1990).

The Bank Board's findings and conclusions in Resolution No. 88–1130P constitute final agency action, which is subject to judicial review under the Administrative Procedures Act. *See* 5 U.S.C. §§ 702–706; *Hartigan v. FHLBB*, 746 F.2d 1300, 1309 (7th Cir.1984). However, counter claimants have never challenged properly the findings and conclusions in the Resolution. They have not served the Bank Board in this case, and they may not collaterally attack the Bank Board's conclusions. *Order of Railway Conductors v. Pennsylvania R.R. Co.*, 323 U.S. 166, 171, 65 S.Ct. 222, 224, 89 L.Ed. 154 (1944) (denying request to annul certification by National Mediation Board, stating: "(Plainly, no such relief should be granted, if at all, in the absence of the board as a party")); *Associated General Contractors, Inc., v. Laborers Int'l Union*, 476 F.2d 1388, 1407 (TECA 1973) ("agency orders should not be mandated or subjected to invalidation in any judicial proceedings unless the agency has been made party to such proceedings"); *McCowen v. Jamieson*, 724 F.2d 1421, 1423 (9th Cir.1984); *Boles v. Greenville Housing Auth.*, 468 F.2d 476, 479 (6th Cir.1972) (review of agency action without naming agency as a party deprives it of the right to defend the integrity of its administrative decisions). A number of United States District Courts in Texas have recently supported this conclusion. *Triland Inv. Group v. FDIC*, 735 F.Supp. 698, (N.D.Tex. 1990); *Smith v. Ranchers Sav. Ass'n*, No. A089–CA–099, slip op. at 8 (W.D.Tex. filed Apr. 3, 1990). Therefore, the Bank Board's determination in Resolution No. 88–1130P, based on the administrative record, is conclusive on the issue of whether unsecured creditors would have received any share of Banc Home's assets in liquidation.

As the FHLBB declared no funds were available to general creditors of Banc Home, Taylor and Patterson would have received nothing for their claims in a liquidation. It is the opinion of this Court, the lack of receivership assets to pay unsecured creditors, will never change, thus, this Court may not impose damages upon the FDIC/Manager–Receiver in any amount.

▇ FDIC/Receiver next argues this court may dismiss on prudential grounds, under *Triland Holdings & Co. v. Sunbelt Serv. Corp.*, 884 F.2d 205 (5th Cir.1989), for the reason the FDIC/Receiver has trans-

ferred all of its rights to pursue claims inherited from Banc Home; therefore, no possibility exists the FDIC will ever recover any funds in the future which would be available for distribution to unsecured creditors. Under the Acquisition Agreement between then FSLIC/Receiver, now FDIC/Receiver, and Olney Savings and Loan Association, now AmWest, it was agreed FSLIC/Receiver would provide financial assistance to Olney as part of the purchase and assumption transaction. In return, FSLIC/Receiver agreed to transfer to FSLIC in its Corporate Capacity all the claims against directors and officers, and all of the other specified claims which had not already been transferred to Amwest in the Acquisition Agreement. The overall effect of the transfer of claims was that FSLIC/Receiver transferred either to Amwest or FSLIC in its Corporate Capacity all of the assets of Banc Home to the extent any assets existed or may exist in the future. Therefore, FDIC/Receiver argues, there is no possibility the receiver ever will have any assets available for distribution to unsecured creditors.

This Court in "pre-Triland" rejected this same mootness argument. See *Sampley Real Estate, Inc., d/b/a Gum Drop Tree v. Cramer, et al.*, MO–89–CA–22 (W.D.Tex. June 12, 1989); *Moore v. Home Savings Association*, MO–88–CA–269 (W.D.Tex. May 30, 1989); and *FSLIC–Receiver for Vista Savings Association, et al. v. Desert Inn Company, et al.*, MO–89–CA–014 (W.D.Tex. May 30, 1989). This Court rejected this argument because of a concern the plaintiff might be able to collect on a judgment at some time in the future.

In the *Triland* case, the Fifth Circuit addressed the prudential mootness claim argued by FDIC/Receiver in the instant case, and stated:

> If true, this contention would justify dismissal of these actions on prudential grounds. But on the record before this court, we are unable to determine that there will never be any possibility of satisfying a favorable judgment. We are unable to conclude that all potential forms of relief are permanently precluded.

884 F.2d at 208. This Court today held there would never be any assets in the Banc Home receivership estate to satisfy any judgment under 12 U.S.C. § 1821(i). Thus, this Court is of the opinion even if it were to enter a judgment for money damages, against the FDIC/Receiver, the judgment would never be collectible because there never will be any assets available to the receivership to pay such a judgment. *Triland*, 884 F.2d at 208; *FSLIC v. Locke*, 718 F.Supp. 573, 585–88 (W.D.Tex.1989). Thus, it is the opinion of this Court, Taylor and Patterson's counterclaims are moot and should therefore be dismissed for lack of subject matter jurisdiction. Fed.R. Civ.P. 12(b)(1). Accordingly,

IT IS ORDERED Counter–Defendant, FDIC/Receiver's Motion For Summary Judgment is hereby GRANTED.

IT IS FURTHER ORDERED the Motion of AmWest Savings Association to Stay Suit to Recover Deficiency is hereby GRANTED. Any and all defenses to the making of this Promissory Note or relating to the suit to recover the deficiency are also stayed.

IT IS FURTHER ORDERED the counterclaims of Farmers Market of Odessa, Inc., Roy R. Taylor, and Nora L. Patterson are hereby DISMISSED for failure to state a claim upon which relief may be granted.

All relief requested and not expressly granted is hereby and in all things denied.